Lance A. Etcheverry (Cal. Bar No. 199916)
lance.etcheverry@skadden.com
James Y. Pak (Cal. Bar No. 304563)
james.pak@skadden.com
William K. Wray Jr. (Cal. Bar No. 338653)
william.wray@skadden.com
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
525 University Avenue
Palo Alto, California 94301
Telephone: (650) 470-4500
Facsimile: (650) 470-4570

Michael W. McTigue Jr. (pro hac vice)
michael.mctigue@skadden.com
Meredith C. Slawe (of counsel)
meredith.slawe@skadden.com
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
One Manhattan West
New York, New York 10001-8602
Telephone: (212) 735-3000

Attorneys for Defendant Abercrombie & Fitch Co.

**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| NAOMI HEILMAN, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>ABERCROMBIE & FITCH CO.,<br><br>Defendant. | Case No. 3:26-cv-02224-EMC<br><br>**DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS THE FIRST AMENDED CLASS ACTION COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>**FILED UNDER SEPARATE COVER: (1) REQUEST FOR JUDICIAL NOTICE; (2) DECLARATION OF WILLIAM K. WRAY IN SUPPORT; and (3) [PROPOSED] ORDER**<br><br>**Date: September 24, 2026**<br>**Time: 1:30 p.m.**<br>**Courtroom: 5, 17th Floor**<br>**Judge: Hon. Edward M. Chen**<br>**Complaint Filed: March 13, 2026** |

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that on September 24, 2026, at 1:30 p.m., or as soon thereafter as the matter may be heard, in Courtroom 5, 17th Floor, of the United States District Court for the Northern District of California, located at 450 Golden Gate Avenue, San Francisco, California 94102, before the Honorable Edward M. Chen, Defendant Abercrombie & Fitch Co. ("Abercrombie") will and hereby does move the Court for an order dismissing Plaintiff Naomi Heilman's First Amended Class Action Complaint (Dkt. 26) in its entirety, with prejudice, pursuant to Federal Rule of Civil Procedure 12(b)(6). The Motion is made on the grounds that (1) the First Amended Complaint fails to state a claim under California Civil Code § 1770(a)(29)(A) because the challenged Shipping & Handling charge is not a "mandatory" fee and the pleading does not plausibly allege otherwise as to Plaintiff's own purchases; and (2) the claim under California Civil Code § 1770(a)(9) is derivative of Count I and independently is insufficiently pled because that provision does not reach the alleged drip-pricing conduct.

This Motion is based on this Notice of Motion and Motion; the accompanying Memorandum of Points and Authorities; the concurrently filed Request for Judicial Notice and supporting Declaration; the [Proposed] Order filed concurrently herewith; the pleadings and papers on file in this action; and such further argument as may be presented at or before the hearing.

Dated: August 19, 2026

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

By: /s/ Lance A. Etcheverry
Lance A. Etcheverry
*Attorney for Defendant Abercrombie & Fitch Co.*

**TABLE OF CONTENTS**


Page

TABLE OF AUTHORITIES ..... iii

I. PRELIMINARY STATEMENT ..... 1

II. BACKGROUND ..... 4

III. ARGUMENT ..... 6

A. Legal Standard ..... 6

B. The Shipping & Handling Charge Is Not a "Mandatory" Fee. ..... 8

1. The Court has already defined "mandatory," and the charge does not meet that definition. ..... 8

2. The Legislature targeted fees that can never be avoided, not charges the customer elects. ..... 10

3. The Court should not read a "reasonably avoidable" qualifier into the word "mandatory." ..... 11

4. Plaintiff's construction would require Abercrombie to advertise a price that is false for most of its customers. ..... 13

C. Plaintiff Does Not Allege That She Was Required To Pay the Charge: She Alleges Only That She Does Not Remember. ..... 13

D. Plaintiff's Allegation That No Abercrombie Store Was "Nearby" Is Not Well Pleaded and Is Contradicted by Her Own Exhibits. ..... 15

E. Plaintiff's Amended Complaint Includes a Collection of Irrelevant and Inaccurate Information That Does Not Change the Court's Conclusion. ..... 17

1. Plaintiff screenshotted a feature that shows current in-store stock, not whether a customer can pick up an item for free (Fig. 17). ..... 18

2. Plaintiff has no standing to assert any claim that Reddit poster /u/TheMapleGust may have against Abercrombie (Figs. 19-22). ..... 19

3. The fact that some items are sold out is irrelevant (Figs. 23-A to 23-C). ..... 20

4. The Hollister claims fail because Plaintiff alleges no Hollister purchase. ..... 20

F. Count II Falls with Count I, and Independently Lacks Merit. ..... 20

G. Dismissal Should Be with Prejudice. ..... 21

IV. CONCLUSION ..... 21

**TABLE OF AUTHORITIES**


**Cases** **Page**

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ..... 6

*DiCampli-Mintz v. County of Santa Clara*, 55 Cal. 4th 983 (2012) ..... 11, 12

*Edwards v. Arthur Andersen LLP*, 44 Cal. 4th 937 (2008) ..... 12

*Erickson v. Nebraska Machinery Co.*, 2015 WL 4089849 (N.D. Cal. July 6, 2015) ..... 7

*Gonzalez v. Planned Parenthood of Los Angeles*, 759 F.3d 1112 (9th Cir. 2014) ..... 6

*Iyere v. Wise Auto Group*, 87 Cal. App. 5th 747 (2023) ..... 14

*Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988 (9th Cir. 2018) ..... 7

*Lexecon Inc. v. Milberg Weiss Bershad Hynes & Lerach*, 523 U.S. 26 (1998) ..... 12

*Miller v. Ghirardelli Chocolate Co.*, 912 F. Supp. 2d 861 (N.D. Cal. 2012) ..... 18, 20

*Milner v. Department of the Navy*, 562 U.S. 562 (2011) ..... 11, 12

*NEI Contracting & Engineering, Inc. v. Hanson Aggregates Pacific Southwest, Inc.*, 926 F.3d 528 (9th Cir. 2019) ..... 19

*Nixon v. Vegas.com, LLC*, 2025 WL 3719885 (N.D. Cal. Dec. 23, 2025), *appeal docketed sub nom. Cohn v. Vegas.com, LLC*, No. 26-455 (9th Cir. Jan. 22, 2026) ..... 21

*O'Shea v. Littleton*, 414 U.S. 488 (1974) ..... 18

*Quach v. California Commerce Club, Inc.*, 16 Cal. 5th 562 (2024) ..... 11

*Russello v. United States*, 464 U.S. 16 (1983) ..... 12

*Soo Park v. Thompson*, 851 F.3d 910 (9th Cir. 2017) ..... 14

*Sprewell v. Golden State Warriors*, 266 F.3d 979 (9th Cir. 2001) ..... 6

*Threshold Enterprises Ltd. v. Pressed Juicery, Inc.*, 445 F. Supp. 3d 139 (N.D. Cal. 2020) ..... 7

*Tinder v. Pinkerton Security*, 305 F.3d 728 (7th Cir. 2002) ..... 14

*UL LLC v. Space Chariot Inc.*, 250 F. Supp. 3d 596 (C.D. Cal. 2017) .......... 7

*United States v. Ritchie*, 342 F.3d 903 (9th Cir. 2003) .......... 7

*Warth v. Seldin*, 422 U.S. 490 (1975) .......... 19

*Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981 (9th Cir. 2009) .......... 21

**Statutes** **Page**

Cal. Civ. Code § 1770(a)(29)(A) .......... passim

Cal. Civ. Code § 1770(a)(29)(A)(ii) .......... 3, 12

Cal. Civ. Code § 1770(a)(9) .......... 20, 21

Cal. Civ. Code § 1780(a) .......... 18, 20

Cal. Civ. Proc. Code § 1858 .......... 12

**Rules** **Page**

Fed. R. Civ. P. 12(b)(6) .......... 7

**Other Authorities** **Page**

2023 Cal. Legis. Serv. Ch. 400 (S.B. 478) .......... 2, 10

A. Judiciary Comm., 2023-2024 Reg. Sess., Analysis of S.B. 478 (June 27, 2023) .......... 12

S. Judiciary Comm., 2023-2024 Reg. Sess., Analysis of S.B. 478 (Feb. 14, 2023) .......... 10

## I. PRELIMINARY STATEMENT

Plaintiff again tries to plead that Abercrombie has violated California's Honest Pricing Law. The statute requires that an advertised price include "all mandatory fees or charges." Cal. Civ. Code § 1770(a)(29)(A). Plaintiff contends the statute was violated because the product pages on Abercrombie's website display prices that do not include an optional $7.00 Shipping & Handling charge. Once again, Plaintiff's theory fails because Abercrombie's Shipping & Handling charge is not a mandatory fee. The optional charge applies only if a customer has selected an item, elected to have Abercrombie deliver it to her home at "Standard" speed (and not delivered to a local store), and then only if she has not already qualified for free delivery by, for example, spending more than $99, using myA&F VIP membership benefits, or using a promotional code. A customer who wants to buy clothing online can readily obtain it without paying the $7.00 Plaintiff now complains about.

This Court has already held that a fee is "mandatory" if "customers are required to pay it to obtain the advertised good," and this charge is therefore not mandatory, because it "is not required to acquire the item itself." (Dkt. 25, July 29, 2026 Order Granting Motion to Dismiss ("Order") at 6.) A charge that a customer elects to pay is not a charge the seller requires. The Amended Complaint does not allege otherwise, and no amendment could so allege.

During oral argument and in its order dismissing the original complaint, this Court commented that any amendment must comply with the requirements of Rule 11. In a misguided attempt to meet those obligations, Plaintiff pleads only that she "did not *recall* having the option to ship the product to any nearby store free of charge." (FAC ¶¶ 13-14 (emphasis added).) That memory-related hedge is deliberate. Abercrombie advised Plaintiff's counsel, both orally and in a letter she chose to attach to her Amended Complaint, that "there is no scenario in which Ms. Heilman could have seen that the dress could be ordered online for home delivery, but could not have it available for free in-store pickup." (FAC Ex. 1.) When told that the specific allegations the Court identified as lacking, if made, would be false, Plaintiff declined to make them and instead alleged her own uncertainty.

Plaintiff's backup theory is that the charge becomes "mandatory" whenever a particular customer would find the free alternatives (assuming free shipping isn't otherwise available through other choices made during checkout) inconvenient. That is a misreading of the statute. The Honest Pricing Law was enacted to stop sellers from advertising a price without including charges the customer has no way to escape: resort fees, ticketing surcharges, mandatory cleaning fees, processing fees. *See* 2023 Cal. Legis. Serv. Ch. 400 (S.B. 478), § 1(a). A concertgoer cannot buy the ticket without the service fee. A hotel guest cannot check out without the resort fee. But an Abercrombie customer buying clothing on its website does not face any such issue. She is shown the price of the product she wants together with her options for receiving it: "Pickup in Store" is priced "Free" on the same screen as the delivery option, and the shopping-bag sidebar the Amended Complaint itself reproduces tells her how much more she would need to spend to ship for free (FAC ¶ 25, Fig. 3). She can readily avoid the $7 charge.

Nor does Plaintiff's geographic theory rescue her pleading. Plaintiff does not plausibly allege that she is a customer for whom no Abercrombie store is within reasonable reach. Again, even if she were, the charge would not be mandatory. Distance does not affect the $99 free-shipping threshold, myA&F VIP membership, or promotional offers, each of which independently produces free delivery. Distance from a store makes one way to obtain the product less convenient. It does not make the charge required.

The Court reserved whether the statute might reach a charge that "cannot reasonably be avoided as a practical matter," calling it "a question this Court need not yet resolve." (Order at 7.) Plaintiff has built her entire Amended Complaint on that reservation, and rewrote her class definitions to reach purchasers for whom free pickup "was not reasonably available." (FAC ¶¶ 49-50.) But her amendments do not actually present that question: as explained below, Plaintiff still never alleges that free pickup, or any other route to free delivery, was unavailable to her. And her theory fails in any event as a matter of statutory construction. "Mandatory" is not an ambiguous word, so there is no occasion to consult legislative history at all. The "reasonably avoid" phrase on which Plaintiff depends appears in a committee analysis and not in the statute. The Legislature knew how to write a reasonableness qualifier into this very provision, and did so

twenty words later. Cal. Civ. Code § 1770(a)(29)(A)(ii). The omission of any such qualification here is sensible, because retailers could not comply with a statute that required them to assess whether optional services are subjectively "reasonable" for each visitor: a retailer cannot know which visitors to its website live near a store, own a car, or are sending gifts across the country. Store proximity is, moreover, only one variable. Whether the charge applies turns on a series of independent decision points: how a customer spends, whether she holds myA&F VIP membership, whether a promotional offer applies, and how she chooses to receive her items.

Plaintiff's rule would also require Abercrombie to advertise prices that customers need not pay. A $20 shirt would have to be advertised at $27 to every shopper, including the many who never pay the charge. For them, the higher figure would be misleading because it would overstate the total price many consumers will pay for the shirt. A statute enacted so that consumers see the true price up front does not compel retailers to display a false one.

Plaintiff's remaining allegations do not fill the gap. To suggest that Abercrombie had no store near her, Plaintiff relies on her counsel's screenshots of an Abercrombie product page archived on the "Wayback Machine." But the Wayback Machine does not archive the databases that store locators query, which is why the same archived page reports no Abercrombie stores near New York City, Boston, or Beverly Hills either. (The federal judiciary's own website behaves the same way when archived.) The archive also contradicts Plaintiff's own screenshot of Abercrombie's actual website, which reports "5 locations near oakland," including stores in Livermore, Milpitas, and Santa Clara. (FAC ¶¶ 40-41, Fig. 17.)

The Amended Complaint's other additions do not concern this Plaintiff or her purchases: they present a stock-availability feature her counsel misread, anonymous Reddit posts by unidentified people about unidentified products, and screenshots of a dress Plaintiff never bought. None of it supplies the allegations the pleading lacks.

Plaintiff has now pleaded twice, with the Order, the hearing colloquy, and Abercrombie's written explanation of the facts in hand. She still does not allege that Abercrombie required her to pay the $7.00 charge, because she cannot. The Amended Complaint should be dismissed with prejudice and without leave to further amend.

**II. BACKGROUND**

California Civil Code § 1770(a)(29)(A), enacted as part of Senate Bill 478 (the "Honest Pricing Law") and made effective July 1, 2024, prohibits "[a]dvertising, displaying, or offering a price for a good or service that does not include all mandatory fees or charges," other than (i) "[t]axes or fees imposed by a government on the transaction" and (ii) "[p]ostage or carriage charges that will be reasonably and actually incurred to ship the physical good to the consumer." Cal. Civ. Code § 1770(a)(29)(A), *amended*, 2026 Cal. Legis. Serv. Ch. 1 (S.B. 694).

Plaintiff filed her original complaint on March 13, 2026. Abercrombie moved to dismiss it. (Dkt. 13.) The Court granted that motion. (Dkt. 25.)

In granting that motion, the Court also granted Abercrombie's request that it take judicial notice of complete, legible versions of the checkout webpages that the Complaint had reproduced in "low resolution and difficult to read" form, observing that the incorporation-by-reference doctrine "prevents plaintiffs from selecting only portions of documents that support their claims, while omitting portions of those very documents that weaken—or doom—their claims." (Order at 3-4 (quoting *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1002 (9th Cir. 2018)).)

In addressing the merits, the Court noted that the Honest Pricing Law only requires businesses to display prices that include all *mandatory* fees and charges. It determined that "the charge at issue only applies if the customer selects" to have her product delivered to her home. The Court held that judicially-noticed screenshots show that "[t]he consumer has the option of selecting free in-store pickup instead," and that "Plaintiff nowhere alleges that the home-delivery option was not reasonably avoidable to her." The Court concluded that the charge was "optional," that it "cannot be defined as mandatory," and that Abercrombie did not violate the Honest Pricing Law. (Order at 6-8.) The Court expressly reserved the separate question whether the statute could reach a charge that "cannot reasonably be avoided as a practical matter," describing that as "a question this Court need not yet resolve." (Order at 7.) The Court dismissed Count II as derivative of Count I. (Order at 8.)

Plaintiff requested leave to amend to add an allegation that the dress was *not* available for free in-store pickup to Plaintiff. The Court granted leave to amend, and twice noted that any such

amendment must comply with Rule 11. *See* Tr. of July 9, 2026 Hearing at 10:23-11:4 ("[I]f I give you leave to amend, and you amend, it would have to be consistent with Rule 11. That through your investigation and good-faith belief, that the item was not available somehow for pick-up."); *see also* Order at 9 ("Dismissal is with leave to amend. Any amendment must be filed within 30 days and must, of course, comply with Rule 11.").

On July 30, 2026, Abercrombie's counsel wrote to Plaintiff's counsel to advise Plaintiff that Abercrombie's records and order management system foreclose the allegation the Court described: "there is no scenario in which Ms. Heilman could have seen that the dress could be ordered online for home delivery, but could not have it available for free in-store pickup," and Abercrombie's records reflect that the same dress "was purchased in A&F brick-and-mortar stores in California during the relevant period." (FAC Ex. 1.) The letter warned that "any allegation that free in-store pickup was unavailable to Ms. Heilman for this purchase would be false and inconsistent with Rule 11." (*Id.*)

Plaintiff nevertheless filed her First Amended Complaint on August 5, 2026 ("FAC," Dkt. 26). She pleads the same two CLRA counts, premised on the same checkout flow, reproduced through substantially the same screenshots (FAC ¶¶ 23-35, Figs. 1-13), seeking only injunctive relief and attorneys' fees (FAC, Prayer for Relief). In the FAC, Plaintiff newly alleges the following:

(1) Plaintiff adds a second purchase from December 19, 2025. (FAC ¶¶ 13-14.) For each purchase, she alleges the $7.00 fee "was mandatory because Plaintiff **did not recall** having the option to ship the product to any nearby store free of charge." (*Id.*)

(2) Plaintiff alleges more broadly that "the pickup in-store option is not available for every item of clothing, in every size and style." (FAC ¶ 38.) As support for that assertion, she offers (i) two screenshots from the Wayback Machine, depicting a "Select A Store" search widget on an archived copy of an Abercrombie product page (FAC ¶ 39, Figs. 15-16); (ii) an unexplained screenshot showing "5 locations near oakland," with three marked "Currently unavailable at this store and for Same Day Delivery," and one, in Modesto, marked "Buy Online - Free Shipping & Handling to

Store" (FAC ¶¶ 40-41, Fig. 17); (iii) a Google Maps screenshot showing that Modesto is 78.3 miles from Oakland (FAC ¶¶ 41-42, Fig. 18); (iv) screenshots of Reddit threads, roughly a year old, in which anonymous users discuss pickup availability (FAC ¶¶ 43-44, Figs. 19-22); and (v) screenshots of a *different* dress (a "100% Cotton Tiered Flowy Maxi Dress" that Plaintiff does not allege she ever purchased) shown as sold out in size XXS/Petite (FAC ¶ 45, Figs. 23-A to 23-C).

(3) Plaintiff narrows her proposed class definitions to California purchasers "where a free in-store pickup option was not reasonably available for them for their selected product(s)." (FAC ¶¶ 49-50.)

(4) Plaintiff attaches to her pleading and characterizes Abercrombie's July 30 Rule 11 letter (FAC ¶¶ 46-47, Ex. 1) and her counsel's August 3 response (FAC ¶ 48, Ex. 2).

None of these additions change the result: Plaintiff has once again failed to sufficiently plead a claim for relief.

## III. ARGUMENT

### A. Legal Standard

To survive a Rule 12(b)(6) motion, a complaint must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Rule 8 requires factual allegations sufficient to "nudge[] [a plaintiff's] claims across the line from conceivable to plausible." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). In deciding whether a complaint crosses that line, the Court "draw[s] on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. The Court is not "required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences," *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001), and "need not . . . accept as true allegations that contradict matters properly subject to judicial notice or by exhibit," *Gonzalez v. Planned Parenthood of Los Angeles*, 759 F.3d 1112, 1115 (9th Cir. 2014) (alteration in original) (citation omitted).

On a Rule 12 motion, the Court may consider documents incorporated by reference into the complaint and matters subject to judicial notice. *United States v. Ritchie*, 342 F.3d 903, 907-08 (9th Cir. 2003); *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 998-1002 (9th Cir. 2018). The Court has already applied these doctrines in this case, taking judicial notice of complete and legible versions of the checkout webpages that the Complaint reproduced selectively. (Order at 3-4.) The Court may continue to rely on those previously noticed materials here. Although Abercrombie's arguments for dismissal of the Amended Complaint do not require judicial notice of the following exhibits (*see* infra §§ III.A-C), Abercrombie's concurrently filed Request for Judicial Notice adds the following materials for additional context on ancillary assertions made by Plaintiff's counsel (*see* infra §§ III.D-E):

- screenshots of the Wayback Machine-archived product page on which Plaintiff relies for Figures 15-16, with the same "Select A Store" search run for New York, Beverly Hills (90210), and Boston, each returning no stores (RJN Exs. A-C);
- documentation from the Internet Archive, which operates the Wayback Machine, explaining that the Wayback Machine does not capture features like the store locator (RJN Ex. D);
- an example of those limitations using screenshots from the federal judiciary's own website as archived by the Wayback Machine (RJN Exs. E-G); and
- screenshots of Abercrombie's live website showing the "Check Store Availability" feature and the free pickup option at checkout (RJN Exs. H-L).

Courts routinely take judicial notice of the contents of webpages, including pages available through the Wayback Machine. *See UL LLC v. Space Chariot Inc.*, 250 F. Supp. 3d 596, 603-04 (C.D. Cal. 2017); *Erickson v. Nebraska Machinery Co.*, 2015 WL 4089849, at *1 n.1 (N.D. Cal. July 6, 2015); *Threshold Enters. Ltd. v. Pressed Juicery, Inc.*, 445 F. Supp. 3d 139, 146 (N.D. Cal. 2020) ("In general, websites and their contents may be judicially noticed."). What judicial notice cannot do is establish "disputed facts" or disputed inferences drawn from noticed materials, *Khoja*, 899 F.3d at 999-1000, a limitation which is of special significance here, as discussed below. (*See* § III.D *infra*.)

**B. The Shipping & Handling Charge Is Not a "Mandatory" Fee.**

The Honest Pricing Law requires that an advertised price include "all mandatory fees or charges." Cal. Civ. Code § 1770(a)(29)(A). A fee is mandatory when the seller requires the customer to pay it in order to obtain the good. Abercrombie's $7.00 Shipping & Handling charge is not that. That charge appears only after a customer has chosen a product and then elected to have Abercrombie deliver it to her home at "Standard" speed, and even then the charge does not apply if she otherwise qualifies for free delivery in any of several other ways. Because the customer triggers the charge through her own elections rather than having it imposed by Abercrombie as a condition of obtaining the product, it is not mandatory.

*1. The Court has already defined "mandatory," and the charge does not meet that definition.*

The Court supplied the governing standard when it dismissed the original Complaint. Consulting both the ordinary meaning of the word and the legislative history, the Court held that a fee is "mandatory" if "customers are required to pay it to obtain the advertised good." (Order at 6.) Applying that standard, the Court found that the charge "only applies if the customer selects the 'home delivery' option (and does not meet the $99 free shipping minimum)"; that "[t]he consumer has the option of selecting free in-store pickup instead"; and that "[b]ecause the fee is not required to acquire the item itself, it cannot be defined as mandatory." (*Id.*) The charge is, in the Court's words, "an optional charge for customers who choose the convenience of home delivery, just as one could charge an optional fee for the convenience of gift wrapping." (*Id.*)

Nothing in the Amended Complaint disturbs that analysis, because the Amended Complaint does not, and could not, allege that Abercrombie requires payment of the charge as a condition of obtaining the product. Abercrombie parts with its goods, at the advertised price and with no Shipping & Handling charge at all, every time a customer selects free in-store pickup, spends more than $99, qualifies for free standard shipping as a myA&F VIP member, or applies a promotional code. A seller that hands over the product without the fee does not require the fee.

Plaintiff's framing also contains a more basic error. The $7.00 charge is not a fee attached to the garment at all; it is the price of a separate service that the customer chooses to

buy. A customer who elects home delivery buys two things, the garment and delivery of the garment, and each carries its own disclosed price: the checkout displays "Pickup in Store" as free and prices delivery, whether to the customer's home or to a FedEx pickup point, at $7.00. (RJN Exs. I-J, L; *see* Order at 6 (the "charge at issue only applies if the customer selects" home delivery).) The statute requires the advertised "price for a good or service" to include all mandatory fees for that good or service. Cal. Civ. Code § 1770(a)(29)(A). It does not require the price of one product to absorb the price of a second, optional service. A service that customers buy separately, priced at the moment it is displayed, is not a hidden mandatory fee for a product.

The Order identified free in-store pickup as one way to avoid the charge. It is not the only one. On the face of the pleading and the materials it incorporates, a customer pays no Shipping & Handling if she (i) selects free in-store pickup; (ii) spends more than $99; (iii) belongs to Abercrombie's "myA&F VIP" loyalty program; or (iv) applies a promotional or coupon code at checkout. Any one of these suffices. None depend on how far the customer lives from a store.

Plaintiff's own exhibits confirm the availability of these options. The Amended Complaint shows the $99 threshold and the disclosure of a shipping fee in Figure 3, and acknowledges that the page "alludes to some 'Shipping' being charged for orders under $99." (FAC ¶ 25.) The very screen Plaintiff says conceals the charge actually informs the shopper how to avoid it, and how much more she would need to spend to do so. So does the product page. The archived Abercrombie product page that Plaintiff's counsel captured (which Plaintiff's Figures 15 and 16 show a part of), states in the purchase panel immediately beneath the "Add To Bag" button: "Free Shipping On Orders Over $99" and "myA&F VIP Members get Free Standard Shipping." (RJN Ex. A.) The free-shipping terms are disclosed on the same page as the price, before the customer ever reaches checkout.

Plaintiff pleads nothing to exclude the possibility of these paths. She does not allege that she was required to take home delivery. She does not allege that she was not a myA&F VIP member entitled to free standard shipping, that no promotional code was available to her, or that she could not have added a second item to reach the $99 threshold. She alleges only that she does

not recall being offered one of the four routes, in-store pickup. (FAC ¶¶ 13-15.) A pleading that leaves every avoidance path open has not alleged a mandatory fee.

That is why Plaintiff's geographic theory fails even on its own premise. Assume, contrary to the record, a customer for whom no Abercrombie store is within reach. The $99 threshold is unaffected by distance. So is the customer's membership in the myA&F VIP program. So is a promotional code. Distance makes one of several avoidance routes less convenient; it does not make the charge required. A charge the customer can decline, for free, at the moment it is offered is not a charge she is "required to pay . . . to obtain the advertised good." (Order at 6.)

*2. The Legislature targeted fees that can never be avoided, not charges the customer elects.*

The statutory purpose confirms the plain meaning. The Legislature enacted SB 478 to prohibit "drip pricing," which it defined as "advertising a price that is less than the actual price that a consumer will have to pay for a good or service." 2023 Cal. Legis. Serv. Ch. 400 (S.B. 478), § 1(a). The quintessential cases are resort fees, ticketing surcharges, mandatory cleaning fees, and processing charges: amounts added at the end of a transaction that the customer has no way to decline. The legislative history notes that "[h]idden required fees are now charged for a variety of goods and services, such as lodging, tickets for live events, restaurants and food delivery, telecom and internet service, and car rentals and purchases." S. Judiciary Comm., 2023-2024 Reg. Sess., Analysis of S.B. 478, at 7 (Feb. 14, 2023).

As the Court observed, the Legislature "consistently equated 'mandatory' with 'required,' 'unavoidable,' and charges that consumers 'cannot avoid,'" and that "[o]ptional fees and charges, such as for premium movie channels in one's cable TV subscription, or for gift-wrapping an online purchase, would not have to be included." (Order at 6 (quoting legislative analyses).) Ticket service fees and resort fees are truly mandatory; once those transactions begin, the charges are inescapable if they are to be concluded. Abercrombie's customer is in the opposite position: the alternative to the $7.00 charge is presented on the same screen, priced at zero. (RJN Exs. I-J, L.)

3. *The Court should not read a "reasonably avoidable" qualifier into the word "mandatory."*

Having held that the charge is not mandatory because the customer elects it, the Court added that "[e]ven if the statute is construed to apply where shipping cannot reasonably be avoided as a practical matter (a question this Court need not yet resolve), Plaintiff nowhere alleges that the home-delivery option was not reasonably avoidable to her." (Order at 7.)

Plaintiff has now built her entire pleading on the reservation, rewriting her class definitions to reach California purchasers "where a free in-store pickup option was not reasonably available for them for their selected product(s)." (FAC ¶¶ 49-50.) Section 1770(a)(29)(A) contains no reasonableness qualifier, and, regardless, as set forth below, she still fails to plead that free in-store pickup was unavailable for the products she bought.

*First*, legislative history is an aid for resolving *ambiguity*. The Court said as much: courts may look to legislative history "when analyzing ambiguous California law." (Order at 5; *see also Quach v. California Commerce Club, Inc.*, 16 Cal. 5th 562, 577 (2024) ("[i]f the statutory language is unclear, we may look to legislative history and public policy as aids in determining how best to give effect to Legislative intent")). Conversely, "[i]f the language is clear and unambiguous there is no need for construction, nor is it necessary to resort to indicia of the intent of the Legislature," and a court "may not, 'under the guise of construction, rewrite the law or give the words an effect different from the plain and direct import of the terms used.'" *DiCampli-Mintz v. County of Santa Clara*, 55 Cal. 4th 983, 992 (2012) (citations omitted); *see also Milner v. Dep't of the Navy*, 562 U.S. 562, 574 (2011) ("Legislative history, for those who take it into account, is meant to clear up ambiguity, not create it").

"Mandatory" is not ambiguous. Its dictionary definition suffices (Order at 5), and Plaintiff has never offered a competing ordinary meaning. Accordingly, legislative history has no work left to do.

*Second*, the phrase "cannot reasonably avoid" is a committee's gloss on the bill, not the text the Legislature enacted. This reference is in the Assembly Judiciary Committee's analysis, which explained that the operative language was "intentionally broad to capture any fee or

charge that a consumer cannot reasonably avoid." (Order at 5-6 (quoting A. Judiciary Comm., 2023-2024 Reg. Sess., Analysis of S.B. 478, at 5 (June 27, 2023)).) That sentence explains why the Committee thought the provision should not be confined to particular industries, and does not purport to define "mandatory," the term that the Legislature voted on. "When presented, on the one hand, with clear statutory language and, on the other, with dueling committee reports, we must choose the language." *Milner,* 562 U.S. at 574.

*Third*, the Legislature knew how to write a reasonableness qualifier into § 1770(a)(29)(A), and did so twenty words later, exempting "[p]ostage or carriage charges that will be reasonably and actually incurred to ship the physical good to the consumer." Cal. Civ. Code § 1770(a)(29)(A)(ii). *See Russello v. United States*, 464 U.S. 16, 23 (1983); *Edwards v. Arthur Andersen LLP*, 44 Cal. 4th 937, 950 (2008) ("Section 16600 is unambiguous, and if the Legislature intended the statute to apply only to restraints that were unreasonable or overbroad, it could have included language to that effect."); *DiCampli-Mintz,* 55 Cal. 4th at 992 ("[W]e must assume that the Legislature knew how to create an exception if it wished to do so." (citation omitted)); Cal. Civ. Proc. Code § 1858 (the court's office is "not to insert what has been omitted").

*Fourth*, courts do not impose unwritten reasonableness qualifiers into statutes, and instead enforce such terms according to their plain meaning even when doing so is practically inconvenient. *See Edwards,* 44 Cal. 4th at 950 (declining to graft a judicially created "narrow-restraint" exception onto the categorical text of Business and Professions Code section 16600); *Lexecon Inc. v. Milberg Weiss Bershad Hynes & Lerach*, 523 U.S. 26, 37 (1998) (rejecting practical objections to a mandatory statutory command because "statutory interpretation has no business getting metaphysical").

*Fifth*, a reasonableness qualifier would be impracticable. A website cannot make live, shopper-by-shopper determinations about how far each customer lives from a store, whether he or she can conveniently drive, whether he or she happens to be traveling, whether he or she is sending a gift to someone in another state, and so on. The construction that Plaintiff urges would render the same $7.00 charge optional for one customer who lives around the corner but

"mandatory" for another five miles away whose car is in the shop. Even within a single household, free pickup at a store a mile away might make home delivery reasonably avoidable for one member and not for one who cannot walk or drive that distance due to illness or injury. Nothing in the text of the statute tells a retailer whether the "reasonably avoidable" line would be 5 miles, 20, or 78, or whether the shopper who is a dollar short of the $99 free-shipping threshold has "reasonably avoided" the charge by adding a second item to her cart.

*4. Plaintiff's construction would require Abercrombie to advertise a price that is false for most of its customers.*

Plaintiff's reading runs contrary to the purposes of the Honest Pricing Law. If the advertised price of a $20 shirt always had to absorb the $7.00 home-delivery charge, every shopper would be told the shirt costs $27, including the many customers who would never pay that charge at all because they pick up in store, meet the free-shipping threshold, hold an account with free-shipping benefits, or use a promotional offer. For those customers, the advertised price would overstate the price of the good, which is the very deception the CLRA exists to prevent.

In short, the charge Plaintiff paid was not required to obtain anything Abercrombie sells. Count I fails as a matter of law, and it fails for reasons no amendment can cure.

**C. Plaintiff Does Not Allege That She Was Required To Pay the Charge: She Alleges Only That She Does Not Remember.**

Most damaging to Plaintiff's Amended Complaint is that she fails to actually allege that she did not have the option to pick up her orders in-store for free. Instead, she engages in sharp pleading tactics and merely alleges that the delivery fee "was mandatory because Plaintiff *did not recall* having the option to ship the product *to any nearby store* free of charge." (FAC ¶¶ 13-14 (emphases added); *see also* ¶ 15 (Plaintiff "does not recall having ever seen" the option).)

Plaintiff asserts nothing more than a statement about the state of her memory. It is entirely possible that both (1) Abercrombie did offer free pickup for the products and (2) Plaintiff does not now recall having that option. Because both of those propositions could be true at the same time, Plaintiff's new allegations fail to "nudge[] [her] claims across the line from conceivable to plausible," as Rule 8 requires. *Twombly*, 550 U.S. at 570. Where allegations are

"merely consistent with" a liability explanation but are equally consistent with an innocent one, the plaintiff must plead "facts tending to exclude the possibility that the alternative explanation is true." *In re Century Aluminum Co. Sec. Litig.*, 729 F.3d 1104, 1108 (9th Cir. 2013); *see Iqbal*, 556 U.S. at 678; *Eclectic Props. E., LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 996 (9th Cir. 2014) (courts "must also consider an 'obvious alternative explanation'" (citation omitted)); *accord D'Augusta v. Am. Petroleum Inst.*, 117 F.4th 1094, 1104-05 (9th Cir. 2024) (affirming dismissal where an "obvious alternative explanation" accounted for the conduct alleged (citation omitted)). She has not done that here.

The obvious explanation for that omission is simply that the option was presented, but Plaintiff does not now recall seeing it. Common sense points to that explanation. *See Iqbal*, 556 U.S. at 679. Plaintiff pleads no facts tending to exclude that possibility, and as a general matter courts treat professed non-recollection as insufficient to create a question of fact: a declarant's statement that she "does not recall seeing or reviewing" a document cannot create a factual dispute about whether she received it. *Tinder v. Pinkerton Security*, 305 F.3d 728, 735-36 (7th Cir. 2002) (summary judgment). Plainly, "there is no conflict between" a person having encountered a document "and, two years later, being unable to recall doing so." *Iyere v. Wise Auto Grp.*, 87 Cal. App. 5th 747, 756 (2023).

The FAC's studied wording is no accident. Abercrombie unequivocally informed Plaintiff that free pickup *was* available for the products she purchased in correspondence predating the amended pleading, which Plaintiff attached. (FAC Ex. 1.) Having been told that "any allegation that free in-store pickup was unavailable to Ms. Heilman for this purchase would be false" (*id.*), Plaintiff declined to make that allegation, and pleaded uncertainty instead. That may or may not be candid but it is not sufficient to plead a claim.

Nor can Plaintiff shelter the missing allegation in "'information and belief.'" That device is reserved for "'facts . . . peculiarly within the possession and control of the defendant.'" *Soo Park v. Thompson*, 851 F.3d 910, 928 (9th Cir. 2017) (citation omitted). What appeared on Plaintiff's own checkout screens is within her knowledge.

Plaintiff's omissions are indeed more extensive. Free in-store pickup is only one of the ways a customer avoids the Shipping & Handling charge. Again, Plaintiff does not allege that she was required to take home delivery, that she was not a myA&F VIP member entitled to free standard shipping, that no promotional code was available to her, or that she could not have reached the $99 free-shipping threshold. To state a claim under the Honest Pricing Law, Plaintiff must allege that Abercrombie **required** her to pay the charge in order to buy what she bought. She has not alleged it, and she cannot plausibly do so. For this reason alone, the Court should dismiss the Amended Complaint with prejudice.

### D. Plaintiff's Allegation That No Abercrombie Store Was "Nearby" Is Not Well Pleaded and Is Contradicted by Her Own Exhibits.

Because the Shipping & Handling charge is not mandatory regardless of where Plaintiff lives, the Court need not reach her geographic allegations at all. They are, in any event, insubstantial. Plaintiff's support for the proposition that Abercrombie had no store near her is her counsel's misuse of the Wayback Machine that her own exhibits refute.

Again, Plaintiff attempts to use a hazy memory to escape dismissal. She alleges she does not recall seeing an option to ship items to Bay Area stores at all. (FAC ¶ 15 ("Plaintiff does not recall having ever seen the option to ship either of these items ~~…~~. . . to any A&F store in the Bay Area.").) Failing that, she attempts to allege that Abercrombie had no "nearby" stores through her lawyer's screenshots of an archived copy of an Abercrombie.com webpage from the Wayback Machine. (FAC ¶ 46 (referencing "[C]ounsel's screen recordings of the Internet Archive's Wayback Machine … .").) Figures 15 and 16 show that according to that archived version, Abercrombie had no store near Oakland on or around November 18, 2025.

That is not how the Wayback Machine works. The archiving service does not purport to archive the entire content of websites that provide dynamic responses to requests for information, like a store locator. Those web pages rely on a separate database of stores that is not embedded in the web page itself, so an archived copy of the page does not reflect all information that the

page might provide. Plaintiff's archived Abercrombie webpage[1] suggests Abercrombie has no stores *anywhere*—not in New York City, Boston, or Beverly Hills—a proposition that is obviously wrong as well as inconsistent with Plaintiff's own allegation that Abercrombie has many brick-and-mortar stores in California.




RJN Ex. A




RJN Ex. B




RJN Ex. C

The Wayback Machine's documentation explains that the site functions this way by design: "When a dynamic page contains forms, JavaScript, or other elements that require interaction with the originating host, the archive will not contain the original site's functionality." (RJN Ex. D.) A store locator is just such a feature: it submits the user's search to the retailer's live store-location database and displays the response. The archived copy is not

[1] https://web.archive.org/web/20251118045734/https://www.abercrombie.com/shop/us/p/the-a-and-f-scarlett-mid-rise-linen-blend-mini-skort-59777835?categoryId=12205&faceout=model&seq=04&afsource=social+proofing&pagefm=navigation-grid&prodvm=navigation-grid

connected to any database to be searched, and therefore cannot accurately provide the information requested.

The federal judiciary's own website demonstrates this limitation. On the live version of uscourts.gov, a "Find a Federal Court" search returns thirty results for an Oakland ZIP code, including the federal courthouses on Clay Street in Oakland, less than four miles away. (RJN Exs. E-F.) The Wayback Machine's August 10, 2026, archive reproduces the search box, but only as an inert shell: an archived page cannot run the search, because the live court-location database that the page queries is no more a part of the archive than Abercrombie's store-location database, exactly as the Internet Archive's documentation warns. (RJN Exs. D, G.)

In sum, Plaintiff has not credibly alleged that she had no Abercrombie store nearby. To the contrary, she alleges that Abercrombie has "numerous" brick-and-mortar stores in California, and her counsel's own July 29, 2026 screenshot of Abercrombie's live website reports "5 locations near oakland." *See* FAC ¶ 46, Fig. 17. The FAC alleges that Figure 17 "shows that the nearest store to Oakland is in Modesto" and that "Modesto is 78.3 miles away." (FAC ¶ 41, Fig. 18.) But the results visible in Figure 17 include stores in Livermore, Milpitas, and Santa Clara, each closer to Oakland than Modesto, and the Wayback Machine shows that Abercrombie had a store in Concord, California (25 minutes away from Oakland by car) during the time period that Plaintiff ordered her products.[2] Plaintiff has not alleged that the free pick-up option was not available at these stores. That remains true even if the Court were to entertain the practical-availability framing it reserved, which it should not. (Order at 7.)

### E. Plaintiff's Amended Complaint Includes a Collection of Irrelevant and Inaccurate Information That Does Not Change the Court's Conclusion.

Plaintiff submitted a collection of materials that do not relate to any alleged purchase by Plaintiff. None of these materials state a claim against Abercrombie because Plaintiff must plead facts showing that she herself suffered injury from a mandatory fee on her own purchases. Article III requires that Plaintiff herself "has sustained or is immediately in danger of sustaining

---

[2] Wayback Machine Archive of Abercrombie Store Page, https://web.archive.org/web/20241113052331/https://www.abercrombie.com/shop/us/clothing-stores/US/Concord/CA/10487.

some direct injury" from the challenged conduct; "[a]bstract injury is not enough." *O'Shea v. Littleton*, 414 U.S. 488, 494 (1974). Standing under the CLRA is narrower still: it supplies a claim only to a consumer "who suffers any damage as a result of" the challenged practice, Cal. Civ. Code § 1780(a), and a named CLRA plaintiff must herself establish that statutory standing, including her own "economic injury." *Miller v. Ghirardelli Chocolate Co.*, 912 F. Supp. 2d 861, 868 (N.D. Cal. 2012). Screenshots that Plaintiff's counsel took while browsing Abercrombie's website in July 2026 cannot allege that Ms. Heilman suffered any damages, and neither can anonymous Reddit posts: those are unverified secondhand grievances gathered from the internet, not facts about either of Plaintiff's purchases.

Nonetheless, Abercrombie addresses them here to clarify why they do not contradict what Abercrombie told Plaintiff in the letter attached as Exhibit 1: that if Plaintiff sees clothing on Abercrombie.com that she can order for delivery to her home, then she has the option to instead pick it up at no charge from an Abercrombie store.

*1. Plaintiff screenshotted a feature that shows current in-store stock, not whether a customer can pick up an item for free (Fig. 17).*

Plaintiff's counsel took screenshots of Abercrombie's webpage in July 2026. (FAC ¶ 46.) As noted, these screenshots have nothing to do with any purchase made by Plaintiff. Further, they do not show what counsel suggests. Abercrombie's website separately lets customers (i) check in-store availability (i.e., whether an item happens to be in stock or available for same-day pickup at a given store) and (ii) choose which store to use for free in-store pickup. The first functionality (in-store availability check) appears on a product page, and is highlighted in Figures 23-A and 23-B of the Amended Complaint. The second functionality (choice of store) is presented at the checkout page, and is highlighted in Figure 14.

It appears that Plaintiff's counsel took screenshots of the first functionality, the in-store availability check, which appears when a customer has a particular product page open and clicks that link. *See* Fig. 17. Certain stores say "Currently unavailable at this store and for Same Day Delivery." *Id.* But the fact that a store might not have a particular item on hand does not mean that a customer cannot use the second functionality later in the checkout flow to have the item

delivered to that store. The distinction can readily be seen on Abercrombie's live website: a sweater whose "Select a Store" availability search reported current in-store stock at only two of nine locations near San Francisco could be sent at checkout to any of nine stores for "Free Order Pickup," two of them the same day, with "Pickup in Store" priced "Free." (RJN Exs. H-J.) A second product searched near Oakland shows the same pattern: current in-store stock at one location of ten, yet "Free Order Pickup" at nine stores at checkout. (RJN Exs. K-L.) Plaintiff's screenshots are both misleading and irrelevant.

2. *Plaintiff has no standing to assert any claim that Reddit poster /u/TheMapleGust may have against Abercrombie (Figs. 19-22).*

Plaintiff includes a number of screenshots from Reddit that purport to be from about a year ago. The FAC devotes four figures and a string of URLs to Reddit threads. (FAC ¶¶ 43-44, Figs. 19-22.) These are anonymous, unverified complaints, made by persons Plaintiff's counsel does not claim to represent, about unidentified products and unidentified locations, posted roughly a year before the FAC was filed. Abercrombie has no way to verify or explain them or even determine if these posts are by real customers describing real transactions. The posts do not reveal where their authors are, or even what country they are in. In any event, they cannot establish anything about whether free pickup was available to *this* Plaintiff for *her* purchases, and they say nothing about whether Abercrombie required Plaintiff to pay the Shipping & Handling charge on her own orders. A named plaintiff "must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class." *Warth v. Seldin*, 422 U.S. 490, 502 (1975); *see NEI Contracting & Eng'g, Inc. v. Hanson Aggregates Pac. Sw., Inc.*, 926 F.3d 528, 532 (9th Cir. 2019) ("[i]f none of the named plaintiffs purporting to represent a class establishes the requisite of a case or controversy with the defendants, none may seek relief on behalf of himself or any other member of the class" (citation omitted)). The grievances of /u/TheMapleGust and their fellow posters, whatever their merit, are not Plaintiff's injuries.

*3. The fact that some items are sold out is irrelevant (Figs. 23-A to 23-C).*

Plaintiff's FAC engages in a lengthy aside about how Abercrombie might be out of stock for some items, particularly clothing that fits "consumers of rarer sizes, like Plaintiff." FAC ¶ 45. She attaches screenshots that are presumably meant to show that Abercrombie's 100% Cotton Tiered Flowy Maxi Dress is not available in Size XXS. Figs. 23-A through 23-C.

These allegations are irrelevant. Plaintiff does not assert that these are products that can be ordered for home delivery but cannot be ordered for in-store pickup. (That claim, which she does not make and which would not be true, would at least bear on whether a delivery charge is mandatory.) Rather, Plaintiff has just shown that Abercrombie's website shows that it is out of stock of some sizes for some products. If an item is shown as out of stock online, it cannot be ordered at all. (*See* FAC Ex. 1.) Statements about a product that Plaintiff could not purchase cannot give rise to standing to challenge allegedly mandatory fees on that product.

*4. The Hollister claims fail because Plaintiff alleges no Hollister purchase.*

As with the original Complaint, Plaintiff's FAC includes screenshots from the hollisterco.com website (FAC ¶¶ 29-35) but does not allege that she ever purchased anything from that website or paid any fee in connection with a Hollister transaction. She therefore lacks both Article III and statutory standing to challenge Hollister's pricing. *See* Cal. Civ. Code § 1780(a) (CLRA action lies for "[a]ny consumer *who suffers any damage as a result of*" the challenged practice) (emphasis supplied); *Ghirardelli*, 912 F. Supp. 2d at 868. All claims premised on the Hollister website should be dismissed for that reason alone.

**F. Count II Falls with Count I, and Independently Lacks Merit.**

The Court dismissed Count II because it "does not allege any independent bait-and-switch theory apart from" the § 1770(a)(29)(A) theory in Count I. (Order at 8.) As Abercrombie's original motion to dismiss pointed out, the CLRA's bait-and-switch provision, § 1770(a)(9), does not reach the drip-pricing conduct alleged. *Nixon v. Vegas.com, LLC*, 2025 WL 3719885, at *7-8 (N.D. Cal. Dec. 23, 2025) ("It makes little sense to assume the California Legislature passed a law to prohibit conduct that was already substantively covered within the

same statute."), *appeal docketed sub nom. Cohn v. Vegas.com, LLC*, No. 26-455 (9th Cir. Jan. 22, 2026).

**G. Dismissal Should Be with Prejudice.**

Leave to amend need not be granted where amendment would be futile, and where, as here, "the plaintiff has previously been granted leave to amend," "[t]he district court's discretion to deny leave to amend is particularly broad." *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 1007 (9th Cir. 2009) (alteration in original) (citation omitted). Plaintiff has now pleaded twice. Before her second attempt, she had the Order, the hearing colloquy identifying the precise allegation required, and Abercrombie's written confirmation that the facts foreclose it. Her response was a pleading that alleges her own lack of memory, an archived screenshot that her own live exhibit contradicts, and the online complaints of strangers. Nothing suggests a third pleading would cure what the second could not. (FAC Ex. 1; Tr. 10-11; Order at 9.) The FAC should be dismissed with prejudice and without leave to further amend.

## IV. <u>CONCLUSION</u>

For the foregoing reasons, Defendant Abercrombie & Fitch Co. respectfully requests that the Court dismiss Plaintiff's First Amended Class Action Complaint in its entirety, with prejudice, pursuant to Federal Rule of Civil Procedure 12(b)(6).

Dated: August 19, 2026

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

By: /s/ Lance A. Etcheverry

Lance A. Etcheverry
*Attorneys for Defendant Abercrombie & Fitch Co.*